# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ADVANTAGE FUTURES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-2005 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| HERM, LLC *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves a futures commission merchant (basically a broker for derivatives) that sued traders for breach of contract when their trading accounts had negative balances. This Court granted a motion to strike three of the affirmative defenses (Dckt. No. [92]), and Defendants responded by filing a motion for reconsideration. This Court respectfully denies Defendants' Motion to Reconsider Order Striking Amended Affirmative Defenses and/or to Reconsider Denial of Motion to Dismiss (Dckt. No. [93]), as well as Defendants' Motion for Leave to File Fourth Affirmative Defense (Dckt. No. [94]).

Motions for reconsideration are disfavored, and rightly so. *See Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("[A] court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination."); *Caisse Nationale de Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) ("Motions to reconsider . . . do not empower litigants to indefinitely prolong a case by allowing them to raise their arguments, piece by piece."); *Quaker Alloy*

*Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.").

District courts have enough work on their plates without collateral litigation about motions that they have already ruled upon. Motions about rulings on motions do not add much value, and slow down the wheels of progress (and justice) for everyone else. Ordinarily, a party who disagrees with a ruling by a District Court should raise that issue with the Court of Appeals, rather than trying the same argument a second time before the same judge (let alone a different one). Motions for reconsideration are even less welcome after the reassignment of a case from one District Court Judge to another. *See Aparicio-Brito v. Lynch*, 824 F.3d 674, 688 (7th Cir. 2016); *HK Sys. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009).

Here, Defendants' motion is little more than a rehash, warmed over, of arguments that they advanced unsuccessfully before Judge Feinerman. *See* Dckt. No. 92. Motions for reconsideration might make sense when there are new facts or new law. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. But Defendants offer neither. Instead, they offer more of the same.

In any event, Judge Feinerman's ruling was right on the merits. Defendants' theme that Plaintiff had a "license to steal" is little more than an empty catch phrase. *See* Dckt. No. 63, at 6. No one is alleging that Plaintiff stole anything. A futures commission merchant does not "steal" from a trader when it liquidates an account that has fallen below margin requirements. Instead, it is exercising an express contractual right.

Defendants cannot defeat a breach of contract claim by alleging that Plaintiff did not follow regulatory requirements. *See* Dckt. No. 63, ¶¶ 26-39; Dckt. No. 93, at 6-7. As Judge

Feinerman ruled, Defendants offered no support for their legal theory. *See* Dckt. No. 92, at 7-9. And once again, Defendants come to this Court empty handed. Plaintiff, in contrast, has in hand controlling authority from the Seventh Circuit. *See ADM Investor Services, Inc. v. Collins*, 515 F.3d 753 (7th Cir. 2008) (holding that a trader cannot avoid paying for trading losses by claiming that the futures commission merchant violated regulatory requirements). Defendants offer no reason to distinguish *ADM*, and they advance no argument why the Seventh Circuit should abandon it.

The implied covenant of good faith and fair dealing is not a colorable defense here, either. That doctrine comes into play when a party abuses discretion afforded by the terms of a contract by acting "'arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.'" *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 462 (7th Cir. 2014) (quoting *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995)). It "prevent[s] one party from depriving another of the right to receive the benefit of the contract in a way the parties could not have contemplated at the time of drafting." *RBS Citizens, N.A. v. Sanyou Import, Inc.*, 525 Fed. Appx. 495, 499 (7th Cir. 2013); *see also In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006) ("This doctrine is a rule of construction, not a stand-alone obligation."); *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 579 (7th Cir. 1995) ("The contractual duty of good faith only applies as a method by which gaps in the contract are filled.").

The contracts in question required the traders to satisfy margin requirements, meaning that they needed to post sufficient funds to cover their positions. The contracts also authorized the broker to sell the traders' positions if they did not provide enough margin. A broker's right to sell the positions is a form of "self-protection," because a broker is on the hook to the

clearinghouse for the trades of its customers. *See ADM Investor Services, Inc. Collins*, 515 F.3d 753, 757 (7th Cir. 2008). Margin requirements thus protect futures commission merchants from the traders. "Margin protects dealers and counterparties *from* defaulting customers, who are in no position to complain when the protection of their trading partners turns out to be incomplete." *Id.* (emphasis added).

Here, the accounts fell below margin requirements, and the traders failed to provide more capital when requested by the broker (with one exception). So the broker did what the contracts expressly permitted: it liquidated the positions when the traders did not post enough margin. The opportunity to sell the traders' positions was not a gap in the contracts – it was a core part of the design itself.

The broker did not act in a manner that the parties did not reasonably expect. The liquidation of the positions was not an "unanticipated development[]." *Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 355 (7th Cir. 2015). Quite the opposite – it was just what the contracts contemplated, and what the parties expressly bargained for. *See In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006) (noting that the doctrine applies to "opportunistic behavior"); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990) ("'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.").

The agreements in question required the traders to provide sufficient funds to cover their positions. The contracts also entitled the broker to liquidate the traders' positions if they did not satisfy margin requirements. And that is exactly what happened. The broker did not behave "opportunistical[ly]" by doing what the contracts expressly permitted. *Kham & Nate's Shoes*

4

*No. 2,* 908 F.2d at 1357. Plaintiff was entitled to "advance its own interests, and it did not need to put the interests of [Defendants] first." *Kham & Nate's Shoes No. 2*, 908 F.2d at 1358.

The implied covenant of good faith is not a tool to frustrate the enforcement of a contract when it conforms to the reasonable expectations of the parties. The implied covenant of good faith does not "block use of terms that actually appear in the contract." *Kham & Nate's Shoes No. 2*, 908 F.2d at 1357; *see also Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir. 1992). The traders "may rue their decision but cannot escape it." *Continental Bank*, 964 F.2d at 705.

Defendants' implicit theory seems to be that Plaintiff had a legal obligation to look out for Defendants' financial interests. But the implied covenant of good faith "does not create 'an enforceable legal duty to be nice or to behave decently in a general way.'" *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1445 (7th Cir. 1992) (quoting *Zick v. Verson Allsteel Press Co.*, 623 F. Supp. 927, 929 (N.D. Ill. 1985)); *Market St. Assoc. Ltd. Partnership v. Frey*, 941 F.2d 588, 594 (7th Cir. 1991) ("[E]ven after you have signed a contract, you are not obligated to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain."); *Kham & Nate's Shoes No. 2*, 908 F.2d at 1357 ("Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.'"); *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 438 (7th Cir. 1987) ("It is not a version of the Golden Rule, to regard the interests of one's contracting partner the same way you regard your own.").

The broker did not take advantage of the traders by, say, liquidating their positions for spite, or by expropriating their money for some other purpose. The broker did not "penalize" the traders "for some reason *unrelated* to [the broker's] business." *Capital Options Investments, Inc.*

5

*v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 189 (7th Cir. 1992) (italics and brackets in original). Instead, Plaintiff sold their positions when the losses were so steep that Plaintiff started suffering a loss, too. Defendants' own answer admits the point: "It was only when the net liquidating value became negative and *Plaintiff's own funds were at risk*, [sic] did it liquidate the accounts." *See* Amended Affirmative Defenses, Dckt. No. 63, at ¶ 53 (emphasis added).

The broker did not "act[] in bad faith" when it sold positions when "its own funds were at risk." *Id.* at ¶ 54. The implied covenant of good faith did not require the broker to continue losing money, or to sacrifice its own financial self-interest for the benefit of the traders. Good faith does not require a party to take one for the team (or for the other party to the contract).

Defendants complain that Plaintiff did not sell their positions on January 24, 2015, when there was still equity in the accounts. *See* Dckt. No. 93, at 4. The traders fault the broker for allowing "trading to continue." *See* Dckt. No. 63, at 10 ¶ 52. But the implied covenant of good faith did not create an affirmative duty to make trading decisions that would have prevented future losses, especially when viewed after the fact. And the implied covenant did not require Plaintiff to stop Defendants' hand-picked agent from trading for the Defendants. *See* Dckt. No. 63, at ¶¶ 3, 46-54. "Contract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper." *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992).

Simply put, Defendants received the "fruits of the bargain." *See Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 355 (7th Cir. 2015) (citation omitted). Defendants may have sour grapes, but that's not a defense to a breach-of-contract claim.

For similar reasons, Defendants' Motion for Leave to File Fourth Affirmative Defense (Dckt. No. [94]) is respectfully denied, too. Once again, Defendants seek to add a defense that Plaintiff violated CFTC regulations and NFA rules. But as Judge Feinerman already ruled, Defendants offered no authority for the notion that a failure to comply with regulatory requirements is a defense to a breach-of-contract claim. *See* Dckt. No. 92. Defendants' Motion to Leave attempts to piggy-back on the Motion to Reconsider (Dckt. No. [93]), which repeats arguments that the Court already considered and rejected. Defendants offer nothing more than repetition. At the risk of (more) repetition, the motion is denied.

Date: December 30, 2019

Steven C. Seeger
United States District Judge